# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00107-PAB-KAS

MARI ROSENFELD, MAX ALEXANDER INMAN

    Plaintiffs,

v.

UNIVERSITY OF COLORADO, through the Board of Regents of the University of Colorado, a body corporate; JUSTIN SCHWARTZ, Chancellor of the University of Colorado Boulder, in his official capacity; DEVIN CRAMER, Dean of Students and Associate Vice Chancellor for Student Affairs of the University of Colorado Boulder, in his individual capacity; HOLLY NELSON, Deputy Dean of Students and Assistant Vice Chancellor of the University of Colorado Boulder, in her individual capacity

    Defendants.

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT (ECF #1) UNDER F.R.C.P. 12(B)(1) AND 12(B)(6)

Defendants—the Board of Regents of the University of Colorado (the "University"), Justin Schwartz in his official capacity, and Devin Cramer and Holly Nelson in their individual capacities—move to dismiss Plaintiffs' Complaint (ECF #1).[1]

### BACKGROUND

On October 3, 2024, Plaintiffs Mari Rosenfeld (a University student) and Max Alexander Inman (a former University student), along with other students belonging to a group called Students for Justice in Palestine ("SJP"), gathered to protest on campus. (ECF# 1, ¶¶ 6, 7, 47.) Plaintiffs knew that on that same day, the Glenn Miller Ballroom at the University Memorial

---

[1] **CONFERRAL STATEMENT:** Per D.C.COLO.LCivR 7.1(a) and this Court's practice standards, counsel for Defendants conferred with Plaintiffs' counsel. Plaintiffs oppose.

1

Center ("UMC") had been reserved for a "formal event for students"—a science, technology, engineering, and mathematics career fair—from 10:00am to 4:00 p.m. (*Id.* ¶¶ 55, 61, 63.)

At 11:00am, Plaintiff Rosenfeld and other SJP members gathered at the UMC's main entrance to prepare for the protest. (*Id.* ¶¶ 55, 63.) SJP members continued to arrive and to add to the number of protestors at the entrance. (*Id.* ¶¶ 69, 70.) Around 11:30 a.m., the University's Student Engagement Response Team ("SERT") asked protestors and counter-protestors to use the nearby South Lawn for their protests and the students moved into that area. (*Id.* ¶¶ 71, 73-75.) While protesting on the South Lawn, Plaintiff Inman announced he was "going into the career fair if you want to join me," and then led protesters into the UMC towards the Glenn Miller Ballroom where the career fair was being held. (*Id.* ¶¶ 83, 84, 86.) At the ballroom entrance, career fair administrators asked protestors not to come in. (*Id.* ¶ 88.) Plaintiffs ignored them and instead, led protestors around the administrators and inside, where hundreds of students were meeting with recruiters. (*Id.* ¶¶ 89, 90, 91.) While inside, Plaintiff Inman used a bullhorn. (*Id.* ¶ 92.) Students and recruiters could hear what Plaintiff Inman was saying, and one person indicated the protesters should leave. (*Id.* ¶¶ 95-97.) An administrator next asked the protesters to leave. (*Id.* ¶ 99.) After a law enforcement officer gave the protestors an order to leave the ballroom, they left and resumed their protest outside on the South Lawn before deciding to end it. (*Id.* ¶¶ 101, 104-105.)

Based on these events, "University administrators" concluded Plaintiffs "disrupt[ed] the career fair" and "use[d] amplified sound." (*Id.* ¶ 107). As a result, Defendant Holly Nelson (the Deputy Dean of Students and Assistant Vice Chancellor for Student Affairs) issued an interim exclusion preventing Plaintiffs from being on campus—except for travelling to and from, and attending, classes—for less than two months. (*Id.* ¶¶ 11, 112, 115.) Defendant Devin Cramer

2

(Dean of Students and Associate Vice Chancellor for Student Affairs) filed a police report documenting the events, but nothing came of it. (*Id.* ¶¶ 10, 118, 121.)

## LEGAL STANDARDS

### I. Motions to Dismiss

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To withstand such a motion, a complaint must contain enough allegations of fact to nudge the plaintiff's claims across the line from conceivable to plausible. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). The court "disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id*. at 1191. "The mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Whether Plaintiff Max Alexander Inman's request for certain injunctive relief is moot is a question of the court's subject matter jurisdiction to be reviewed under Fed. R. Civ. P. 12(b)(1). *See McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).

### II. Permissible Restrictions on Speech at University Campuses

To be sure, "universities are not enclaves immune from the sweep of the First Amendment." *Healy v. James*, 408 U.S. 169, 180 (1972). But "conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior— materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." *Tinker v. Des*

3

*Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969). Thus, while universities may not take action "because of the disapproved content" of student speech, universities do have a well-established right to "exercise [their] legitimate authority to enforce reasonable regulations as to the time, place, and manner of speech[.]" *Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667, 670 (1973). "Associational activities need not be tolerated where they infringe reasonable campus rules." *Healy*, 408 U.S. at 189. "The constitutional right of freedom of speech is the right to dissent, but it is not … the unqualified right to interfere with the rights and safety of others." *Evans v. State Bd. of Agric.*, 325 F. Supp. 1353, 1360 (D. Colo. 1971).

### III.     Qualified Immunity Protects Individual Defendants

"In suits brought against officials in their individual capacities, officials may raise the defense of qualified immunity." *Stuart v. Jackson*, 24 F. App'x 943, 955 (10th Cir. 2001). "Qualified immunity shields public officials from "undue interference with their duties and from potentially disabling threats of liability.'" *Wilkins v. DeReyes*, 528 F.3d 790, 796 (10th Cir. 2008) (citation omitted). Plaintiffs must plead facts that plausibly show (1) the defendant's actions violated a constitutional or statutory right, and (2) that this right was clearly established at the time. *Pierce v. Gilchrist*, 359 F.3d 1279, 1284 (10th Cir. 2004). Plaintiffs must satisfy both prongs, and the district court may "decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Plaintiffs' "[f]ailure to satisfy either of these inquiries will result in dismissal in favor of the defendant." *Pierce*, 359 F.3d at 1284.

"For the law to be 'clearly established,' there ordinarily must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction." *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 981 (10th Cir. 2017). A plaintiff "must do more than cite case law announcing a legal rule

'at a high level of generality.'" *Yeasin v. Durham*, 719 F. App'x 844, 849–50 (10th Cir. 2018) (citation omitted)). "The relevant case law must be particularized to the facts of the case currently before the court." *Id*. In short, every "reasonable official would have understood that what [they are] doing violates that right" and "existing precedent [has] placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (citation and internal alterations omitted). At bottom, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Yeasin*, 719 F. App'x at 849 (citation omitted).

## ARGUMENT

### I. The Court must dismiss Plaintiff Inman's request for prospective injunctive relief pursuant to F.R.C.P. 12(b)(1).

As prospective relief for their claims, Plaintiffs seek "an injunction prohibiting the University from barring pro-Palestine protests in the UMC and on the UMC South Terrace and prohibiting the University from commencing or continuing disciplinary proceedings against students for engaging in protest activity … in support of Palestinian rights." (ECF #1, ¶ 171 and p. 24, "Prayer for Relief".) But Plaintiff Inman is no longer a University student. (*Id.* ¶ 7.) Thus, his request for an injunction preventing the University from taking certain future action against students is moot and must be dismissed. *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009) (former public high school student's claim for injunctive relief that school district's unwritten policy of requiring pre-approval of graduation speeches impinged on her First Amendment rights was moot; there was no longer a live controversy, since student had graduated and district no longer could screen her graduation speech); *Brown v. Jones Cnty. Junior Coll.*, 463 F. Supp. 3d 742, 754 (S.D. Miss. 2020) ("Because he is no longer a student, Brown is no longer subject to JCJC policies, and a preliminary injunction will not redress his injury…. [T]here is no need to prevent further violation of Plaintiffs' constitutional rights as

5

there is no threat of future enforcement or imminent injury because Brown is no longer a student.").

## II. The Court must dismiss Claim 1, "First Amendment Violation – Freedom of Speech and Assembly" (brought only against Chancellor Schwartz in his official capacity) for failure to state a claim.

Plaintiffs first claim is that the University's "policies and procedures governing use of the University of Colorado campus … are overbroad, unreasonable, and not narrowly tailored to serve a significant government interest." (ECF #1, ¶ 129.) They further claim that "setting and/or maintaining policies, practices and procedures for the University that prohibit or impede pro-Palestine protests on campus … are likely to chill a person of ordinary firmness, including other University students, from engaging in activity protected by the First Amendment." (*Id*. ¶ 130.) Finally, they contend that the University's "actions are not reasonable time, place, and manner restrictions on speech," and seek injunctive relief, presumably to prevent enforcement of a policy. (*Id*. ¶¶ 132-33.) The only policy mentioned in the Plaintiffs' Complaint is the Campus Use of University Facilities ("CUUF") Procedures. (ECF #1, ¶¶ 34, 41.) Thus, while unclear, Defendants understand Plaintiffs to be asserting a facial challenge to the University's CUUF Procedures on overbreadth grounds.

A facial challenge to a policy on First Amendment grounds is a "rigorous standard," requiring the Plaintiffs to show that the policy's "unconstitutional applications substantially outweigh its constitutional ones." *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). The Supreme Court has instructed that "[t]he first step in the proper facial analysis is to assess the [policy's] scope. What activities, by what actors, do the [policies] prohibit or otherwise regulate?" *Id.* This requires determining what the policy covers, and starts with the plain language of the challenged policy, or policy section, itself. *Roemer v. Bd. of Regents of N. M.*

6

*State Univ.*, No. CIV 22-0524 JB/JHR, 2025 WL 641228, at *61 (D.N.M. Feb. 27, 2025) (considering as-applied overbreadth challenge to university policy). "A court should address an overbreadth challenge to a law only when the law may have a chilling effect on the free speech rights of parties not before the court." *West v. Derby Unified Sch. Dist. No. 260*, 206 F.3d 1358, 1367 (10th Cir. 2000).

Here, Plaintiffs have not stated a claim that the CUUF procedures are facially overbroad because they do not provide any detail on the procedures at all, much less identify the portion(s) of the procedures that are purportedly "overbroad, unreasonable, and not narrowly tailored." (ECF #1, ¶ 129.) Instead, Plaintiffs include copious background facts about the war in Gaza, (*id.*, ¶¶ 14-22), point to other universities' actions and court cases involving pro-Palestinian protesters (*id.*, ¶¶ 24-28), and then summarily conclude that the University "over-polic[ed] SJP events" and "accused SJP of violating CUUF Procedures on 'chalking' … without substantiating evidence," (*id.*, ¶ 41). At best, they allude to the fact that the CUUF Procedures govern "using chalk on sidewalks or other surfaces to write messages or draw pictures," (ECF #1, ¶ 41); that they had some application to "[u]se of a bullhorn," (*id.*, ¶ 81); and must have prohibit "disruption of the career fair and the use of amplified sound," (*id.*, ¶ 107). These allegations do not state how CUUF Procedures – whether on "chalking" or "amplified sound" or otherwise – are overbroad, unconstitutional, or content-based restrictions on speech.

In the end, "[j]ust as in the community at large, reasonable regulations with respect to the time, the place, and the manner in which student groups conduct their speech-related activities must be respected." *Healy*, 408 U.S. at 192–93. That the University has policies on "chalking" and "amplified sound" are reasonable. Nothing in the Complaint supports the challenge to CUUF Procedures that the Plaintiffs are apparently trying to make.

7

### III. The Court must dismiss Claim 2, "First Amendment Violation – Retaliation" against all Defendants for failure to state a claim, and as against Cramer and Nelson for the additional reason of qualified immunity.

"In assessing First Amendment retaliation claims against defendants who are not an employer of or a party to a contract with the plaintiff, proof of the following elements are required: '(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Jemaneh v. Univ. of Wyoming*, 82 F. Supp. 3d 1281, 1293 (D. Colo.), *aff'd*, 622 F. App'x 765 (10th Cir. 2015) (citation omitted).

Here, Plaintiffs allege that all Defendants unlawfully retaliated against them for protesting at the career fair by excluding them from campus, apart from attending classes, for two months and filing a police report against them. (ECF #1, ¶¶ 115, 118, 140.) The problem for Plaintiffs is that these actions don't qualify as "injur[ies] that would chill a person of ordinary firmness" from engaging in speech. *Jemaneh*, 82 F. Supp. 3d at 1293 (citation omitted).

Regarding the campus exclusion, the Complaint admits it lasted less than two months, and during that time, Plaintiffs were permitted on campus to attend their classes. (*See* ECF #1, ¶ 116.) Thus, the Complaint suggests Plaintiffs were free during the exclusion to continue engaging in numerous forms of speech on campus: chalking, holding signs, protesting, or engaging in other speech on the way to or from class, wearing clothing with protected messages, or engaging in speech with faculty or other students right before, during, and after class. (*See* ECF #1, ¶ 116 (Plaintiffs admitting they weren't prohibited from engaging in speech inside their classrooms).) A short exclusion that nonetheless allows a plaintiff to engage in various forms of

8

speech on any protected topics of the plaintiff's choosing, doesn't chill speech and isn't an adverse action. *See Pierce v. Chene*, No. 1:15-CV-758 LF-KBM, 2017 WL 3600458, at *9 (D.N.M. Feb. 1, 2017) (dismissing First Amendment retaliation claim based on school campus ban where there were "no allegations in the amended complaint that the ban interfered with the [student's parents'] ability to communicate with the governing board, the school board, or [the Public Education Department]" on the bullying allegations at issue).

Regarding the police report, its mere filing, which did not result in charges or any other significant consequences, is not an adverse action that gives rise to a plausible retaliation claim. *See Dick v. Phone Directories Co.*, 397 F.3d 1256, 1270 (10th Cir. 2005) (plaintiff's coworkers' complaint to police about plaintiff, which resulted in police report but no charges, was not an adverse employment action for purposes of plaintiff's Title VII retaliation claim); *Martley v. Basehor, Kansas, City of*, 537 F. Supp. 3d 1260, 1267 (D. Kan. 2021) (First Amendment retaliation claim, premised on defendant's request for criminal investigation into plaintiff, failed to state a claim).

Even if the campus exclusion or police report could sustain a retaliation claim, Claim 2 must still be dismissed against the Individual Defendants on the basis of qualified immunity. There is no law clearly establishing that Plaintiffs have the right to disrupt scheduled University events for other students without being disciplined. *See Yeasin*, 719 F. App'x at 851-52 (no clearly established law precluding university official from expelling male student for online posts where posts threatened to "disrupt [a female student's] education and interfere with her rights"; no Supreme Court case plaintiff identified concerned "university-student conduct that interferes with the rights of other students or risks disrupting campus order"). Nor is it clearly established that a plaintiff could stake a First Amendment retaliation claim on the simple filing of a police

9

report. *See Lincoln v. Maketa*, 880 F.3d 533, 544 n. 5 (10th Cir. 2018) (characterizing a criminal investigation "as an 'adverse employment action' would not have been clearly established"); *Martley*, 537 F. Supp. 3d at 1268 ("*Lincoln* plainly holds that a First Amendment retaliation claim based on the instigation of a criminal investigation is not a clearly established constitutional issue.").

Consequently, the Court must dismiss Claim 2 against all Defendants for failure to state a claim, or alternatively, dismiss it against Cramer and Nelson on qualified immunity grounds.

### IV. The Court must dismiss Claim 3, "First Amendment Violation- Prior Restraint" (brought against Cramer and Nelson only) for failure to state a claim and due to qualified immunity.

Plaintiffs allege that "Defendants Cramer and Nelson's actions in indefinitely excluding Plaintiffs from campus acted as an unconstitutional prior restraint on Plaintiffs' speech because they prohibited Plaintiffs from engaging in First Amendment protected activity on campus." (ECF# 1, ¶ 150.) This is far afield of a prior restraint claim.

A prior restraint on speech is conduct that restricts, or "chills," speech because of its content before the speech is communicated. *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1308 (10th Cir. 2009). To state a claim, a plaintiff must allege four elements: (1) the speaker must apply to the decision maker for approval before engaging in the proposed speech; (2) the decision maker must be empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the proposed communication; (3) approval of the application requires the decision maker's affirmative action; and (4) approval is not a matter of routine, but involves appraisal of facts, the exercise of judgment, and the formation of an opinion. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975). For example, a plaintiff may have alleged a plausible prior restraint claim where a municipal board rejects the plaintiff's application to

10

perform a certain musical in a city-leased theater (*see id.* at 555-56); or a school board denies a permit to hold a rally at a high school (*see Loc. Org. Comm., Denver Chapter, Million Man Mar. v. Cook*, 922 F. Supp. 1494, 1495, 1497 (D. Colo. 1996)).

Nothing of this sort occurred here. Plaintiffs did not "apply" to Defendants to engage in speech. They don't even describe the nature of their alleged planned speech—whether a protest, distribution of a newsletter, or something else—but merely make the conclusory statement that they "intended to engage in First Amendment protected activity on a matter of public concern" at some unknown time. (ECF #1, ¶ 149.) Thus, it's impossible that Defendants implemented the partial campus exclusion "on the basis of [their] review of the content of [Plaintiff's] proposed communication." *Se. Promotions*, 420 U.S. at 554; *see also Dixon*, 553 F.3d at 1308 (plaintiff's prior restraint argument "def[ied] both law and common sense" because plaintiff "was not restrained before the fact"; "[t]ypically, a prior restraint is a requirement that a speaker obtain government approval for her message in advance of publishing it—or, in rare cases, a 'gag order' targeted at particular speech"). Moreover, as discussed *supra* p. 8, Plaintiffs were free during the partial exclusion to continue engaging in speech. Simply put, this is not a prior restraint case.

Even if the alleged facts of this case could be forced into a prior restraint mold, the claim is nonetheless barred by qualified immunity. There is no clearly established law that would have put Cramer and Nelson on notice that excluding Plaintiffs from campus constituted a prior restraint on hypothetical future speech where the exclusion was temporary and permitted Plaintiffs to continue engaging in numerous forms of speech, and was the result of Plaintiffs disrupting a planned career fair. *See Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 140, 142 (3d Cir. 2017) (officials had qualified immunity from prior restraint

11

claim where they categorically banned plaintiff from attending school board meetings after he was threatening and disruptive on several occasions).

Accordingly, the Court must dismiss Claim 3 for failure to state a claim and, again, on qualified immunity grounds.

## V. The Court must dismiss Claim 4 "Fourteenth Amendment Violation - Due Process" (brought against Cramer and Nelson only) for failure to state a claim and due to qualified immunity.

To assess an alleged procedural due process violation, the court "engage[s] in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Rooker v. Ouray Cty.*, 504 F. App'x 734, 736 (10th Cir. 2012) (citation omitted). Plaintiffs' due process claim fails at the first step: they have not alleged a constitutionally protected interest at issue here, and even if they have, such interest is not clearly established and so qualified immunity bars the claim.

The "requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Darr v. Town of Telluride*, 495 F.3d 1243, 1251 (10th Cir. 2007) (citation omitted). So, Plaintiffs must have a protected right at stake before the due process clause is applicable at all. *West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States[.]").

Here, Plaintiffs seem to be alleging that they have some sort of statutorily protected right "to exercise their freedom of speech on the campuses of public institutions of higher education," which in turn creates a liberty interest, which was then infringed by their campus exclusion. (ECF #1, ¶¶ 157-59.) First, this attempts to bootstrap a First Amendment free speech claim

12

(Plaintiffs' Claim 1) into a Fourteenth Amendment due process claim. Plaintiffs have, in essence, tried to allege that their campus exclusion violated their first amendment rights, and that this exclusion <u>also</u> violated their due process rights because they have a first amendment right to free speech. Such circular and confusing allegations don't state a claim. *Cf. Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994) (addressing alleged procedural due process and first amendment claims separately).

<u>Second</u>, a liberty interest isn't implicated here. Generally, "stigma plus an alteration in legal status … implicate[s] a liberty interest." *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011). "There are two elements of a stigma-plus claim: (1) governmental defamation and (2) an alteration in legal status. When these two elements are present, the government may have violated a liberty interest that triggers a procedural due process protection." *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012). Here, Plaintiffs' alleged injury – an interim exclusion from campus – does not implicate a liberty interest at all, nor do Plaintiffs allege dissemination of defamatory comments as is required. Quite simply, their allegations of a "liberty interest" are off the mark. *See Brown v. Univ. of Kansas*, 16 F. Supp. 3d 1275, 1288 (D. Kan. 2014), *aff'd*, 599 F. App'x 833 (10th Cir. 2015) (student dismissed from law school for lying about past criminal convictions; dismissal letters did not implicate liberty interests because "[t]o implicate a liberty interest, there must be publication of false and stigmatizing information").

<u>Third</u>, there is no protected interest in unfettered access to campus. *See Widmar v. Vincent*, 454 U.S. 263, 268 n.5 (1981) ("We have not held … that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings."); *Souders v. Lucero*, 196 F.3d 1040, 1044 (9th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000) (affirming dismissal of due process claim because

13

public university alumnus had no constitutionally protected interest in being on campus); *Duckett v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 986 F. Supp. 2d 1249, 1257 (W.D. Okla. 2013) ("Plaintiff does not identify any independent source of entitlement as a tenured professor to particular duties or unfettered access to campus grounds or facilities."). Indeed, a court in this district has addressed a similar due process claim based on campus exclusion, and concluded that the plaintiff "failed to show a clearly established protected liberty or property interest in accessing the medical school campus." *Profita v. Puckett*, No. 1:15-cv-01237-DME-CBS, 2017 WL 4225451, at *6 (D. Colo. June 6, 2017).[2]

At bottom, nothing in the Complaint states that Plaintiffs have been deprived of a constitutionally protected interest without due process of law. Consequently, Plaintiffs fail to state a claim and the Court must dismiss Claim 4.

Regardless, Cramer and Nelson are entitled to qualified immunity. Even if the Court were inclined to agree that Plaintiffs had suffered some sort of constitutional deprivation, none of their alleged injuries are "clearly established." There is no "weight of authority" that Plaintiffs have a constitutionally protected interest in the right to access campus outside of attending class. *See Profita*, 2017 WL 4225451, at *5 (granting qualified immunity in part because the law was not "clearly established" that plaintiff had an unfettered right to campus). Without such law, Plaintiffs' due process claim is foreclosed.

---

[2] True, the Colorado supreme court has stated that "a non-student's right to access to University functions and facilities, which are open to the public at-large, cannot be permanently denied without due process of law." *Watson v. Bd. of Regents of Univ. of Colo.*, 512 P.2d 1162, 1165 (Colo. 1973). But such decision is not analogous to the situation here: (1) Plaintiffs were not "permanently denied" access to campus (ECF #1, ¶ 115); and (2) the exclusion was not total, as Plaintiffs were permitted to enter campus to attend classes (*id.* ¶ 112).

## VI. The Court must also dismiss Claim 5.

Finally, Plaintiffs allege that the University has violated C.R.S. § 23-5-144, which they allege protects their actions here. Not so. Section § 23-5-144 largely restates federal law, as it prohibits universities from imposing unreasonable restrictions on student speech. But the statute specifically states that "[n]othing in this section grants students, faculty, or staff of the college or university the right to materially disrupt previously scheduled or reserved activities in a portion or section of the student forum at that scheduled time." C.R.S. § 23-5-144(3)(b). Again, Plaintiffs knew the UMC had been reserved for an event that was not generally open to all; they entered the career fair after being instructed not to; used a bullhorn; and they disrupted the event for people participating in it. (ECF #1, ¶¶ 55, 63, 86, 88-90, 92, 95-97, 99). Thus, the cited state statute does not apply to protect the Plaintiffs' conduct here. For that reason, they have not stated a claim that the University violated this statute.

Alternatively, because Plaintiffs have failed to state any of the federal claims above, the Court should, after dismissing Claims 1-4 above, decline to exercise supplemental jurisdiction over and dismiss this state claim.

## CONCLUSION

Defendants respectfully request that the Court dismiss all claims against them with prejudice and grant such other relief as the Court deems just.

**DATED:** March 14, 2025.

        Respectfully submitted:

        *s/ Megan Clark*
        Megan Clark
        Senior Assistant University Counsel
        Special Assistant Attorney General
        Office of University Counsel
        1800 Grant Street, Suite 700
        Denver, CO 80203
        303-860-5691
        Megan.Clark@cu.edu
        *Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2025, I electronically filed the foregoing with the Court's electronic filing system (CM/ECF) which will automatically cause notification to be sent to the following counsel of record:

Daniel D. Williams
Matthew A. Simonsen
Ashlyn L. Hare
Hutchinson Black and Cook LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
Dan.williams@hbcboulder.com
Matt.simonsen@hbcboulder.com
Ashlyn.hare@hbcboulder.com
*Attorney for Plaintiffs*

*s/ Elisha Garza*
Elisha Garza, Litigation Paralegal

17