**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00107-PAB-KAS

MARI ROSENFELD, MAX ALEXANDER INMAN

Plaintiffs,

v.

UNIVERSITY OF COLORADO, through the Board of Regents of the University of Colorado, a body corporate; JUSTIN SCHWARTZ, Chancellor of the University of Colorado Boulder, in his official capacity; DEVIN CRAMER, Dean of Students and Associate Vice Chancellor for Student Affairs of the University of Colorado Boulder, in his individual capacity; HOLLY NELSON, Deputy Dean of Students and Assistant Vice Chancellor of the University of Colorado Boulder, in her individual capacity

Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (ECF #22) UNDER F.R.C.P. 12(B)(1) AND 12(B)(6)**

---

Defendants—the Board of Regents of the University of Colorado (the "University"); Justin Schwartz in his official capacity; and Devin Cramer and Holly Nelson in their individual capacities (the "Individual Defendants")—move to dismiss Plaintiffs' First Amended Complaint (ECF #22).[1]

## BACKGROUND

On October 3, 2024, Plaintiffs Mari Rosenfeld (a University student) and Max Alexander Inman (a former University student), along with other students belonging to a group called Students for Justice in Palestine ("SJP"), gathered to protest on campus. (ECF# 22, ¶¶ 3, 6, 7.) Plaintiffs knew that on that day, the Glenn Miller Ballroom at the University Memorial Center

[1] **<u>CONFERRAL STATEMENT</u>:** Per D.C.COLO.LCivR 7.1(a) and this Court's practice standards, undersigned Defendants' counsel conferred with Plaintiffs' counsel. Plaintiffs oppose.

(“UMC”) had been reserved for “a formal event for students”—a science, technology, engineering, and mathematics career fair—from 10:00 a.m. to 4:00 p.m. (*Id.* ¶¶ 59, 63, 67, 69.)

At 11:00 a.m., Plaintiff Rosenfeld and other SJP members gathered at the UMC’s main entrance to prepare for the protest. (*Id.* ¶¶ 66, 71.) SJP members continued to arrive and to add to the number of protestors at the entrance. (*Id.* ¶¶ 74-76.) Around 11:30 a.m., the University’s Student Engagement Response Team (“SERT”) asked protestors and counter-protestors to use the nearby South Lawn for their protests, and the students moved into that area. (*Id.* ¶¶ 77, 79-81.) While protesting on the South Lawn, Plaintiff Inman announced he was “going into the career fair if you want to join me,” and then led protesters into the UMC towards the Glenn Miller Ballroom where the career fair was being held. (*Id.* ¶¶ 91, 92, 94.) At the ballroom entrance, career fair administrators asked protestors not to come in. (*Id.* ¶ 96.) Plaintiffs ignored them and instead, led protestors around the administrators and inside, where hundreds of students were meeting with recruiters. (*Id.* ¶¶ 97, 98, 99.) While inside, Plaintiff Inman used a bullhorn. (*Id.* ¶ 100.) Students and recruiters could hear what Plaintiff Inman was saying, and one person indicated the protesters should leave. (*Id*. ¶¶ 103-105.) An administrator next asked the protesters to leave. (*Id*. ¶ 107.) After a law enforcement officer gave the protestors an order to leave the ballroom, they left and resumed their protest outside on the South Lawn before deciding to end it. (*Id.* ¶¶ 109, 112-113.)

Because Plaintiffs “disrupt[ed] the career fair” and “use[d] amplified sound,” they had violated University policies, were so notified, and were placed on a brief interim campus exclusion. (*Id.* ¶¶ 115, 120.) Defendant Holly Nelson (the Deputy Dean of Students and Assistant Vice Chancellor for Student Affairs) issued the interim exclusion preventing Plaintiffs from being on campus—except for travelling to and from, and attending, classes—for less than

two months. (*Id.* ¶¶ 11, 121, 146.) Defendant Devin Cramer (Dean of Students and Associate Vice Chancellor for Student Affairs) filed a police report documenting the events, but the matter was not pursued any further. (*Id.* ¶¶ 10, 141, 144.)

## LEGAL STANDARDS

### I. Motions to Dismiss

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To withstand such a motion, a complaint must contain enough allegations of fact to nudge the plaintiff's claims across the line from conceivable to plausible. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). The court "disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* at 1191. "The mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

A motion to dismiss based on the court's lack of subject matter jurisdiction is reviewed under Fed. R. Civ. P. 12(b)(1). *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

### II. Permissible Restrictions on Speech at University Campuses

To be sure, "universities are not enclaves immune from the sweep of the First Amendment." *Healy v. James*, 408 U.S. 169, 180 (1972). But "conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." *Tinker v. Des*

*Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969). Thus, while universities may not take action "because of the disapproved content" of student speech, universities do have a well-established right to "exercise [their] legitimate authority to enforce reasonable regulations as to the time, place, and manner of speech[.]" *Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667, 670 (1973). "Associational activities need not be tolerated where they infringe reasonable campus rules." *Healy*, 408 U.S. at 189. "The constitutional right of freedom of speech is the right to dissent, but it is not . . . the unqualified right to interfere with the rights and safety of others." *Evans v. State Bd. of Agric.*, 325 F. Supp. 1353, 1360 (D. Colo. 1971).

## III. Qualified Immunity Protects Individual Defendants

"In suits brought against officials in their individual capacities, officials may raise the defense of qualified immunity." *Stuart v. Jackson*, 24 F. App'x 943, 955 (10th Cir. 2001). "Qualified immunity shields public officials from "undue interference with their duties and from potentially disabling threats of liability.'" *Wilkins v. DeReyes*, 528 F.3d 790, 796 (10th Cir. 2008) (citation omitted). Plaintiffs must plead facts that plausibly show (1) the defendant's actions violated a constitutional or statutory right, and (2) that this right was clearly established at the time. *Pierce v. Gilchrist*, 359 F.3d 1279, 1284 (10th Cir. 2004). Plaintiffs must satisfy both prongs, and the district court may "decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Plaintiffs' "[f]ailure to satisfy either of these inquiries will result in dismissal in favor of the defendant." *Pierce*, 359 F.3d at 1284.

"For the law to be 'clearly established,' there ordinarily must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction." *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 981 (10th Cir. 2017). A plaintiff "must do more than cite case law announcing a legal rule

'at a high level of generality.'" *Yeasin v. Durham*, 719 F. App'x 844, 849–50 (10th Cir. 2018) (citation omitted). "The relevant case law must be particularized to the facts of the case currently before the court." *Id*. In short, every "reasonable official would have understood that what [they are] doing violates that right" and "existing precedent [has] placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (citation and internal alterations omitted). At bottom, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Yeasin*, 719 F. App'x at 849 (citation omitted).

## ARGUMENT

### I. The Court must dismiss Claim 1, "First Amendment Violation – Retaliation" against all Defendants for failure to state a claim, and as against Cramer and Nelson for the additional reason of qualified immunity.

"In assessing First Amendment retaliation claims against defendants who are not an employer of or a party to a contract with the plaintiff, proof of the following elements are required: '(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Jemaneh v. Univ. of Wyoming*, 82 F. Supp. 3d 1281, 1293 (D. Colo.), *aff'd*, 622 F. App'x 765 (10th Cir. 2015) (citation omitted).

Here, the First Amended Complaint ("FAC") lacks plausible allegations in support of element two – that the University's actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. Plaintiffs allege that Defendants Nelson and Cramer unlawfully retaliated against them for protesting at the career fair by excluding them from campus, apart from attending classes, for two months and by filing a police report. (ECF #22, ¶ 158.) But neither the brief exclusion, nor the filing of the police report

rise to a level of "injury that would chill a person of ordinary firmness" from engaging in speech. *Jemaneh*, 82 F. Supp. 3d at 1293 (citation omitted). This standard is "objective" and "vigorous," and "is substantial enough that not all insults in public debate become actionable under the Constitution." *Eaton v. Meneley*, 379 F.3d 949, 956 (10th Cir. 2004).

*a. The limited exclusion from the campus*

Plaintiffs acknowledge that the limited interim exclusion was imposed due to the "serious nature" of the disruption at the career fair, and not because of their protest in general. (*Id.*, ¶¶ 128-29.) The FAC alleges that interim exclusions are "seldom imposed" and that the notice of exclusion "did not assert . . . that Plaintiffs posed any continuing threat." (ECF #22, ¶¶ 124, 128.) Plaintiffs also complain that no one at the University "advise[d] that protesting . . . would be tolerated during the interim exclusion." (*Id.* ¶ 136.) In other words, Plaintiffs allege that the interim exclusion chilled their speech because they were not affirmatively told that they could continue to engage in speech while they were on campus.

But "[e]ven when [a] defendant's actions make it more difficult to engage in protected speech, courts routinely dismiss First Amendment retaliation claims when alternative avenues remain open to engage in such speech." *Douglass v. Garden City Cmty. Coll.*, 652 F. Supp. 3d 1329, 1349 (D. Kan. 2023) (internal quotations omitted). And that's the case here. The First Amended Complaint admits the exclusion lasted less than two months, and that during that time, Plaintiffs were permitted on campus to attend their classes. (ECF #22, ¶ 121.) The FAC does not allege that the interim exclusion prohibited or attempted to prohibit Plaintiffs' ability to speak on any topics off-campus. (*See id.* ¶ 137 (alleging that campus exclusion prohibited Plaintiffs from engaging in speech only "on campus and outside of the classroom").) Nor did the interim exclusion prohibit Plaintiffs' ability to engage in numerous forms of speech on campus during

the times they were there, such as chalking, holding signs, engaging in other speech on the way to or from class, wearing clothing with protected messages, or engaging in speech with faculty or other students right before, during, and after class. A short exclusion that nonetheless allows a plaintiff to engage in various forms of speech on any protected topics of the plaintiff's choosing, doesn't chill speech and isn't an adverse action. *See Pierce v. Chene*, No. 1:15-CV-758 LF-KBM, 2017 WL 3600458, at *9 (D.N.M. Feb. 1, 2017) (dismissing First Amendment retaliation claim based on school campus ban because said ban would not chill a person of ordinary firmness, where there were "no allegations in the amended complaint that the ban interfered with the [student's parents'] ability to communicate with the governing board, the school board, or [the Public Education Department]" on the bullying allegations at issue); *see also Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) (concluding that website operator's ban from University athletic practices "did not cause [plaintiff] to suffer an injury that would chill a person of ordinary firmness from continuing to publish an internet site" because while the ban "may have made it more difficult to obtain some information regarding the University's varsity athletic programs, . . . alternative avenues to information remained open").

*b. Filing of the police report*

The mere filing of the report, which did not result in any charges or any other consequences, is not an adverse action that gives rise to a plausible retaliation claim. *See Dick v. Phone Directories Co.*, 397 F.3d 1256, 1270 (10th Cir. 2005) (plaintiff's coworkers' complaint to police about plaintiff, which resulted in police report but no charges, was not an adverse employment action for purposes of plaintiff's Title VII retaliation claim); *Martley v. Basehor, Kansas, City of*, 537 F. Supp. 3d 1260, 1267 (D. Kan. 2021) (First Amendment retaliation claim, premised on defendant's request for criminal investigation into plaintiff, failed to state a claim).

Even if the police report included inaccurate statements (*see* ECF #22, ¶ 131), that is not enough either, because injury to reputation is not enough to have a chilling effect on Plaintiffs' speech. *See Douglass*, 652 F. Supp. 3d at 1349 ("[S]tatements concerning the illegality or impropriety of a plaintiff's conduct are insufficient, standing alone, to support a First Amendment retaliation claim[.]"); *see also How v. City of Baxter Springs, Kansas*, 217 F. App'x 787, 798 (10th Cir. 2007) (statements about possible criminal charges insufficient to show injury for First Amendment retaliation claim).

*c. Claim 1 against the Individual Defendants is also barred by qualified immunity*

Even if the campus exclusion or police report could sustain a retaliation claim, Claim 1 must still be dismissed against the Individual Defendants on the basis of qualified immunity. First, there is no law clearly establishing that Plaintiffs have the right to disrupt scheduled University events for other students without being disciplined. *See Yeasin*, 719 F. App'x at 851-52 (no clearly established law precluding university official from expelling male student for online posts where posts threatened to "disrupt [a female student's] education and interfere with her rights"; no Supreme Court case plaintiff identified concerned "university-student conduct that interferes with the rights of other students or risks disrupting campus order"). Second, there is no law clearly establishing that an interim campus exclusion which does not restrict speech is an objectively chilling action – indeed, the little law available implies the opposite. *See, e.g.*, *Pierce*, 2017 WL 3600458, at *9. And third, it is not clearly established that a plaintiff could stake a First Amendment retaliation claim on the simple filing of a police report. *See Lincoln v. Maketa*, 880 F.3d 533, 544 n. 5 (10th Cir. 2018) (characterizing a criminal investigation "as an 'adverse employment action' would not have been clearly established"); *Martley*, 537 F. Supp.

3d at 1268 ("*Lincoln* plainly holds that a First Amendment retaliation claim based on the instigation of a criminal investigation is not a clearly established constitutional issue.").

Consequently, the Court must dismiss Claim 1 against all Defendants for failure to state a claim or at a minimum, dismiss it against Defendants Cramer and Nelson on qualified immunity grounds.

## II. The Court must dismiss Claim 2, "First Amendment Violation – Freedom of Speech and Assembly" (brought only against Defendants Cramer and Nelson) for failure to state a claim and for qualified immunity.

Plaintiffs next claim that Defendants Nelson and Cramer's "actions in indefinitely excluding Plaintiffs from campus suppressed Plaintiff's speech because they prohibited Plaintiffs from engaging in First Amendment protected activity on campus," and that they did so "based on [the speech's] content." (ECF #22, ¶¶ 168-69.) Not so: the FAC lacks plausible allegations that the University's actions were based on the speech's content.

The FAC admits that Plaintiffs intended to protest at a career fair because the companies at the fair had "links to the destruction of Gaza." (ECF #22, ¶ 63.) It admits that the UMC Glen Miller Ballroom and the South Terrace had been reserved for this career fair. (*Id.* ¶¶ 68-69.) It admits that Plaintiffs and other protesters were directed to protest on the South Lawn, outside the UMC, and admits that amplified sound, outdoors, at noon, was permitted. (*Id.* ¶¶ 77, 79, 88.) It admits that directly contrary to these instructions, Plaintiffs left the South Lawn and entered the career fair with a bullhorn, walking around University administrators who were trying to keep the protesters out of the fair. (*Id.* ¶¶ 91-92, 96-97.) And, while parts of the UMC are generally accessible to students and the public (*id.* ¶¶ 52, 95), the FAC acknowledges that the career fair was not such a publicly accessible or open event, as it was held behind closed doors or barriers and not all students could attend (*id.* ¶¶ 68, 96). Plaintiffs' actions in coming into the room and

using a bullhorn indoors disrupted the career fair and interfered with the student attendees' ability to interact with the potential employers. (*Id.* ¶ 103-110.) These actions, which were in violation of University policy, were the basis for the interim exclusion. (*Id.* ¶¶ 120, 131.)

Accordingly, Plaintiffs admit that the interim exclusion was based on their actions of disrupting the career fair and was not because of the content of their speech. *See Buttny v. Smiley*, 281 F. Supp. 280, 286 (D. Colo. 1968) (concluding that discipline for plaintiffs who had disrupted job interviews for positions with the CIA did not have "chilling" effect on freedom of speech because "Plaintiffs engaged in overt physical acts which effectively interfered with one of the normal activities of the University, namely interviewing students for employment" and "[w]hat [the plaintiffs] said on the occasion in question is not the basis for the disciplinary proceedings; it is what they did"). And as discussed *supra*, nothing in the interim campus exclusion notice referred to, or limited, speech – only physical access to locations.

Plaintiffs include several conclusory allegations that the purpose of the exclusion was "to prevent, or at least discourage, further disfavored speech by Plaintiffs" and "was not imposed to serve any legitimate disciplinary objective contemplated by Section L(2) of the Student Code of Conduct." (ECF #22, ¶¶ 138-39.) But such conclusory allegations are not required to be taken as true, and when considered in the context of the admitted behavior and disturbances above, should be given no weight. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("[I]n examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."). In the end, "[j]ust as in the community at large, reasonable regulations with respect to the time, the place, and the manner in which student groups conduct their speech-related activities must be respected." *Healy*, 408 U.S. at 192–93.

Besides, Cramer and Nelson are again entitled to qualified immunity. To overcome qualified immunity, Plaintiffs must show that the Individual Defendants' actions "had a deterrent, or 'chilling' effect on [their] speech." *Eaton*, 379 F.3d at 954. But as discussed above, the interim campus exclusion did not have any chilling effect, because Plaintiffs could still engage in speech on any topic off campus or during the times they were on campus. Moreover, there is no weight of authority such that the Individual Defendants would have clearly known that an interim campus exclusion is a "chilling" action. *Pierce*, 2017 WL 3600458, at *9.

## III. <u>The Court must dismiss Claim 3 "Fourteenth Amendment Violation - Due Process" (brought against Cramer and Nelson only) for failure to state a claim and due to qualified immunity.</u>

To assess an alleged procedural due process violation, the court "engage[s] in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Rooker v. Ouray Cty*., 504 F. App'x 734, 736 (10th Cir. 2012) (citation omitted). Plaintiffs' due process claim fails at the first step: they have not alleged a constitutionally protected interest at issue here, and even if they have, such interest is not clearly established and so qualified immunity bars the claim.

The "requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Darr v. Town of Telluride*, 495 F.3d 1243, 1251 (10th Cir. 2007) (citation omitted). So, Plaintiffs must have a protected right at stake before the due process clause is applicable at all. *West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States[.]").

Here, Plaintiffs seem to be alleging that they have some sort of statutorily protected right "to exercise their freedom of speech on the campuses of public institutions of higher education," which in turn creates "a liberty and/or property interest," which was then infringed by their campus exclusion. (ECF #22, ¶¶ 176-79.) First, this attempts to bootstrap a First Amendment free speech claim (Plaintiffs' Claim 2) into a Fourteenth Amendment due process claim. Plaintiffs have, in essence, tried to allege that their campus exclusion violated their First Amendment rights, and that this exclusion also violated their due process rights because they have a right to free speech. Such circular and confusing allegations don't state a claim. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of . . . due process, must be the guide for analyzing these claims."). Accordingly, to the extent that Plaintiffs' due process allegations are duplicative of Claims 1 or 2, they are subsumed into the analysis above.

Second, a liberty interest isn't implicated here. "There are two elements of a stigma-plus claim: (1) governmental defamation and (2) an alteration in legal status. When these two elements are present, the government may have violated a liberty interest that triggers a procedural due process protection." *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012). Here, Plaintiffs' alleged injury – an interim exclusion from campus – does not implicate either element. Quite simply, their allegations of a deprivation of a "liberty interest" are off the mark.

Third, there is no property interest in unfettered access to campus. *See Widmar v. Vincent*, 454 U.S. 263, 268 n.5 (1981) ("We have not held . . . that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings."); *Souders v. Lucero*, 196 F.3d 1040, 1044 (9th Cir.

1999), *cert. denied*, 529 U.S. 1067 (2000) (affirming dismissal of due process claim because public university alumnus had no constitutionally protected interest in being on campus); *Duckett v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 986 F. Supp. 2d 1249, 1257 (W.D. Okla. 2013) ("Plaintiff does not identify any independent source of entitlement as a tenured professor to particular duties or unfettered access to campus grounds or facilities."). Indeed, a court in this district has addressed a similar due process claim based on a campus exclusion, and concluded that the plaintiff "failed to show a clearly established protected liberty or property interest in accessing the medical school campus." *Profita v. Puckett*, No. 1:15-cv-01237-DME-CBS, 2017 WL 4225451, at *6 (D. Colo. June 6, 2017).[2]

At bottom, nothing in the Complaint states that Plaintiffs have been deprived of a constitutionally protected interest without due process of law. Consequently, Plaintiffs fail to state a claim and the Court must dismiss Claim 3.

Regardless, Cramer and Nelson are entitled to qualified immunity. Even if the Court were inclined to agree that Plaintiffs had suffered some sort of constitutional deprivation, none of their alleged injuries are "clearly established." There is no "weight of authority" that Plaintiffs have a constitutionally protected interest in the right to access campus outside of attending class. *See Profita*, 2017 WL 4225451, at *5 (granting qualified immunity in part because the law was not "clearly established" that plaintiff had an unfettered right to campus). Without such law, Plaintiffs' due process claim is foreclosed.

---

[2] True, the Colorado supreme court has stated that "a non-student's right to access to University functions and facilities, which are open to the public at-large, cannot be permanently denied without due process of law." *Watson v. Bd. of Regents of Univ. of Colo.*, 512 P.2d 1162, 1165 (Colo. 1973). But such decision is not analogous to the situation here: (1) Plaintiffs were not "permanently denied" access to campus (ECF #22, ¶ 146); and (2) the exclusion was not total, as Plaintiffs were permitted to enter campus to attend classes (*id.* ¶ 121).

## IV. <u>The Court must also dismiss Claims 4 and 5: the University is immune and the Court lacks subject-matter jurisdiction over them.</u>

Finally, Plaintiffs allege that the University has violated C.R.S. § 23-5-144, which they allege protects their actions here (ECF #22, ¶¶ 182-192); and has breached a contract by depriving them of access to facilities for which they paid, (*id*., ¶¶ 197-98.) But "absent a state's consent, the Eleventh Amendment prohibits a federal court from adjudicating state-law claims against a state." *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1086 (D. Colo. 2017). "This is so even where a federal-law claim might otherwise allow for supplemental jurisdiction over a state-law claim." *Id*. Here, the University is an arm of the state, has not waived its immunity, nor has it consented to be sued. Thus, the University is immune to Plaintiffs' claims under C.R.S. § 23-5-144 and for breach of contract, and both must be dismissed per F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction. *Norris v. Univ. of Colo., Boulder*, 362 F. Supp. 3d 1001, 1021 (D. Colo. 2019).

Moreover, because Plaintiffs have failed to state any of the federal claims above, the Court should, after dismissing Claims 1-3 above, decline to exercise supplemental jurisdiction over and dismiss these two state claims.

## CONCLUSION

Defendants respectfully request that the Court dismiss all claims against them with prejudice and grant such other relief as the Court deems just.

**DATED:** May 6, 2025.

Respectfully submitted:

*s/ Megan Clark*
Megan Clark
Senior Assistant University Counsel
Special Assistant Attorney General
Office of University Counsel

1800 Grant Street, Suite 700
Denver, CO 80203
303-860-5691
Megan.Clark@cu.edu
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2025, I electronically filed the foregoing with the Court's electronic filing system (CM/ECF) which will automatically cause notification to be sent to the following counsel of record:

Daniel D. Williams
Grata Law and Policy LLC
1919 14th Street, Suite 700
Boulder, CO 80302
(303) 535-3533
dan@gratalegal.com

Matthew A. Simonsen
Ashlyn L. Hare
Hutchinson Black and Cook LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
Matt.simonsen@hbcboulder.com
Ashlyn.hare@hbcboulder.com
*Attorneys for Plaintiffs*

*s/ Elisha Garza*
Elisha Garza, Litigation Paralegal