IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00107-PAB-KAS

MARI ROSENFELD, MAX ALEXANDER INMAN

    Plaintiffs,

v.

UNIVERSITY OF COLORADO, through the Board of Regents of the University of Colorado, a body corporate; JUSTIN SCHWARTZ, Chancellor of the University of Colorado Boulder, in his official capacity; DEVIN CRAMER, Dean of Students and Associate Vice Chancellor for Student Affairs of the University of Colorado Boulder, in his individual capacity; HOLLY NELSON, Deputy Dean of Students and Assistant Vice Chancellor of the University of Colorado Boulder, in her individual capacity

    Defendants.

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE (ECF #52) TO THEIR MOTION TO DISMISS (ECF #22) UNDER F.R.C.P. 12(B)(1) AND 12(B)(6)**

Defendants respectfully submit this Reply to Plaintiffs' Response (ECF #52) to Defendants' Motion to Dismiss First Amended Complaint ("FAC") (ECF #33).

## INTRODUCTION

Plaintiffs' FAC admits: (1) they were free to protest on the South Lawn, including using a bullhorn starting at noon, (ECF #22, ¶¶ 63-64; 66; 76; 77; 79; 85-88; 113); (2) Plaintiffs were aware that the Glenn Miller Ballroom and the South Terrace of the University Memorial Center ("UMC") were reserved for a career fair and not open to public, (*id.* ¶¶ 59-60; 67-69; 77; ECF #52-1, Ex. 1 to Resp., p. 2, ¶¶ 2-4); (3) Plaintiffs were aware of the University's policies governing facilities use, including the use of a bullhorn, (ECF #22, ¶¶ 33-34; 88-89); and (4) Plaintiffs violated those policies by entering the reserved space during the career fair and using a

bullhorn indoors, (*id.*, ¶¶ 91-92; 94; 96-98; 100; 105; 107; ECF #52-1, Ex. 1 to Resp., p. 3, ¶¶ 5-6; pp. 4-5; p. 6, ¶ 1). Despite these admissions, they claim the University retaliated against them for their "peaceful anti-war protest" by placing them on a limited physical exclusion from the campus. They allege two claims under the First Amendment (retaliation and content-based restriction); a violation of procedural due process; and allege violation of a Colorado statute.[1]

The FAC does not contain any nonconclusory factual allegations that the limited physical exclusion from campus was aimed at preventing them from speaking or protesting such that it would chill a person of ordinary firmness from continuing to engage in that activity. Nor are there any plausible allegations that the University took action against Plaintiffs *because of the content* of their protest, as opposed to their violation of the University's facilities use policy. Further, there is no recognized property right to be present on campus—where, as here, a student's right to education is not implicated—to support a violation of procedural due process. Finally, Plaintiffs' arguments that the University has waived its Eleventh Amendment immunity through a state statute are directly belied by a Supreme Court decision.

Accordingly, the University has moved to dismiss the FAC for failure to state a claim and on the basis of the Individual Defendants' qualified immunity. In their Response, Plaintiffs simply reiterate their conclusory allegations and rely on cases that are both factually and legally distinct.[2] At bottom, this case is nothing more than students deliberately and blatantly breaking

---

[1] An additional claim—breach of contract—has been withdrawn without prejudice in response to the University's assertion of 11th Amendment immunity.

[2] Plaintiffs have included eight attachments with their Response, including several videos, arguing that these attachments may be considered without converting the motion to one for summary judgment. Defendants agree that Exhibits 1 and 2 are incorporated into the First Amended Complaint because the interim exclusions are central to Plaintiffs' claims, *see Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002), but Defendants disagree that

2

campus facilities policies in an effort to disrupt a campus activity—a career fair with a number of employers aimed at facilitating employment opportunities for University students—and then complaining when the University took limited and appropriate measures to address their actions.

## REPLY ARGUMENT

### I. None of the cases Plaintiffs cite support their argument that the limited exclusion from the campus would chill a person of ordinary firmness from engaging in speech.

Defendants have moved to dismiss Plaintiff's First and Second Claims (retaliation and violation of the First Amendment), based on, among other things, that Plaintiffs have failed to establish as a matter of law that the limited campus exclusion would chill a person of ordinary firmness from engaging in protected activity.[3] The cases Plaintiffs cite in their Response are inapposite, as the facts of those cases are substantially different from those here.

As an initial matter, Plaintiffs refer to the limited exclusion as "indefinite." (*E.g.*, ECF #22, ¶¶ 168, 170, 178.) That is contrary to Exhibits 1 and 2 that Plaintiffs seek to incorporate into their FAC. (ECF ##52-1; 52-2.) *See Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) ("allegations plainly contradicted by properly considered documents or exhibits" need not be accepted as true); *Golden v. Bank of New York Mellon*, No. 14-CV-00034-CMA-KMT, 2014 WL 4696407, at *3 (D. Colo. Sept. 19, 2014) ("If the documents contradict

---

any of the other attachments may be considered at this stage. Were the Court to determine that it could consider the other attachments, however, Defendants maintain that the materials support their motion to dismiss as they show Plaintiffs were disciplined for violations of University policy. (*See, e.g.*, ECF ##52-3, 52-4, 52-5 (videos showing Plaintiffs disrupting career fair and disregarding University personnel's efforts to prevent their entry)).

[3] Plaintiffs concede that the filing of a police report "is not itself an objectively chilling action," but claim "it only adds to the fear perceived by an objectively reasonable student in Plaintiffs' position." (ECF #52, p. 6, n. 4). Plaintiffs do not cite any authority where the filing of a police report combined with some other action rose to a level of constitutional violation.

the allegations of the complaint, the documents control and the court need not accept as true the allegations in the complaint.") (cleaned up). These letters made clear that the limited exclusion was "interim," or until the Student Conduct & Conflict Resolution ("SCCR") had gathered further information as part of its resolution process, to which end a meeting was scheduled for just five days later. (ECF ##52-1, 52-2, pp. 7-8.) Second, the exclusion lasted less than two months and, during that time, Plaintiffs were permitted on campus to attend their classes. (*See* ECF #22, ¶ 121.) As Defendants pointed out in their Motion, nothing prevented Plaintiffs from speaking before, during, and after their classes, on social media, or in any other format. (ECF #33, pp. 6-7.)

Plaintiffs cite several cases to support their argument that their brief limited exclusion from campus objectively had a chilling effect. (ECF #52, pp. 6-7.) But the facts of these cases are substantially different from those here.

In *Seamons*, the Tenth Circuit held that that a public school student had sufficiently stated a violation of the First Amendment when he was expelled from the football team for sharing information about a hazing incident in the locker room with school administrators, coaches, and family, and did so without causing any disturbance to the school's classwork or rights of other students. *Seamons v. Snow*, 84 F.3d 1226, 1237-38 (10th Cir. 1996). The question here—whether a limited exclusion from the campus may chill a person from exercising one's constitutional rights—was not at issue in *Seamons*.

Likewise, in *Thompson*, the plaintiff, a University student, was prohibited from contacting her former professor or discussing the professor with any students after she sent an email to her former classmates encouraging them to submit "honest" end of term evaluations of

4

the professor. *Thompson v. Ragland*, 23 F.4th 1252, 1259–60 (10th Cir. 2022). The court held that at the motion to dismiss stage, the defendant was not entitled to qualified immunity because the law was sufficiently clear that the plaintiff could not be punished for sending a "respectful, noninflammatory email expressing her dissatisfaction with a professor's performance," in the absence of evidence of any disruption or violation of school policy or other students' rights.

Finally, in *McCook*, the court held that the plaintiffs' eight-point "list of adverse actions" could support the conclusion that the defendant school district's actions could objectively chill a person from exercising constitutional rights. *McCook v. Spriner Sch. Dist.*, 44 F. App'x 896, 905–06 (10th Cir. 2002) (unpublished) (enumerating the alleged adverse actions as, among other things, suspending the plaintiffs' son, assaulting the father when he went to the school to challenge the suspension, filing criminal charges, excluding them from school property, preventing them from attending board meetings and voting in board elections, and threatening civil and criminal prosecution).[4]

Unlike the actions at issue in these cases, which were broad and permanent, Plaintiffs' exclusion here was limited, both in time and in scope. The notice Plaintiffs received specified that the campus exclusion was "interim"—to allow the SCCR to initiate its resolution process,

---

[4] Plaintiffs also cite *Flores v. Victory Preparatory Acad.*, 411 F. Supp. 3d 1149, 1161 (D. Colo. 2019) and *Douglass v. Garden City Cmty. Coll.*, 543 F. Supp. 3d 1043, 1056 (D. Kan. 2021). But these cases do not support Plaintiffs' arguments. In *Flores*, the complaint alleged that students were suspended for protesting a requirement to recite the school pledge and parents were banned from school sporting events for publicly disagreeing. *Flores*, 411 F. Supp. 3d. at 1161-62. Here, as discussed below, Plaintiffs do not sufficiently allege that their exclusion was based on the content of their speech. In *Douglass*, the complaint established that in addition to the campus ban, the school publicly shamed the plaintiff and blamed her for its financial woes, interfered with her ability to host student athletes, and intimidated witnesses from testifying for her. *Douglass*, 543 F. Supp. 3d 1056. The court held that the actions, taken in their entirety, constituted retaliation. There are no such allegations here.

5

for which a meeting was set only five days later; it was neither indefinite nor permanent. (ECF ##52-1; 52-2, Exs. 1 and 2, pp. 7-8.) Further, the exclusion was limited in scope, permitting Plaintiffs to attend their classes. (*Id.*) Finally, the exclusion did not prohibit Plaintiffs from speaking, contacting any person on or off campus, posting on social media, sending correspondence, carrying signs, or engaging in any other means of communication. As such, the limited exclusion at issue in this case differs substantially from those in *Seamon*, *Thompson*, and *McCook*, and is more similar to the exclusion in *Pierce v. Chene*, No. 1:15-CV-758 LF-KBM, 2017 WL 3600458 (D.N.M. Feb. 1, 2017).

In *Pierce*, the parents of school children who repeatedly complained to the school about bullying of one of their children and about the school's failure to take action were excluded from the school campus, except to drop off and pick up their children at the school gate. The court found that the exclusion was not enough to chill a person of ordinary firmness in the exercise of their First Amendment rights because the exclusion was limited to physical presence and did not prevent the plaintiffs from contacting the school or the governing board to air their grievances. *Id.* at *9. *See also Lovern v. Edwards*, 190 F.3d 648, 656 (4th Cir. 1999) (the school's exclusion of a parent from school grounds did not violate the First and Fourteenth Amendments where the parent had "ample opportunity" to communicate his concerns).

Here, too, Plaintiffs were able to continue to attend classes, were permitted to be on campus ten minutes before and after class, and were not restrained, in any way or via any medium, from communicating their concerns. Accordingly, the FAC fails to state a claim for retaliation under the First Amendment.

6

> II. **Plaintiffs identify no allegations that plausibly support their claim that the interim limited exclusion was because of the content of their speech.**

In response to the University's arguments that Plaintiffs failed to state a claim for violation of the First Amendment (claim two) because they have not alleged any facts showing that their limited exclusion was due to the content of their speech (pro-Palestine/anti-war), as opposed to a legitimate reason, such as violation of the campus policies and disruption of the career fair, Plaintiffs simply reiterate their allegations. (ECF #52, pp. 10-12.)

But those allegations, once again, reflect their *opinion* that the campus exclusion was unwarranted. (*Id.,* pp. 11-12.) At best, they have alleged that "at least one counter-protestor who simultaneously entered the career fair while filming Plaintiffs" received "more favorable treatment." (ECF #22, ¶¶ 92, 126.) But there are no allegations that any counter-protestors pushed their way into the career fair or used a bullhorn indoors, disrupting the fair.

Plaintiffs' own non-conclusory allegations, as well as Exs. 1 and 2 to their Response, reflect that their limited exclusion was based on their violation of the campus facilities use policy, of which they were aware and which they chose to ignore. Accordingly, they fail to state a claim for violation of the First Amendment based on a content-based restriction of their speech.

> III. **None of the cases Plaintiffs cite support their claim that they were entitled to procedural due process prior to the limited exclusion.**

The University has moved to dismiss Plaintiffs' third claim alleging a violation of the due process requirement of the Fourteenth Amendment, arguing that to the extent Plaintiffs are alleging a violation of their liberty interest under the First Amendment, it is addressed in Plaintiffs' claims one and two. (ECF #33, p. 12.) To the extent Plaintiffs are alleging a violation of procedural due process for deprivation of property interest, this fails because Plaintiffs have not shown that their limited exclusion implicated a protected property interest.

In response, Plaintiffs cite several cases that are distinguishable, because in all of them the campus exclusion was either complete—including exclusion from on-campus classes— or permanent. *See Goss v. Lopez*, 419 U.S. 565, 574-76 (1975) ("total exclusion from the educational process for more than a trivial period, and certainly if the suspension is for 10 days, is a serious event in the life of the suspended child") (emphasis added); *Caldwell v. Univ. of New Mexico Bd. of Regents*, 679 F. Supp. 3d 1087, 1155-56 (D.N.M. 2023) (discussing the difference between suspension and a campus ban, and concluding that the campus ban that extended to in-person classes was sufficiently severe to implicate the student's property right in education); *Watson v. Bd. Of Regents*, 512 P.2d 1162, 1164-65 (Colo. 1973) (permanent ban from all three of the University's campuses implicated procedural due process rights).[5]

## IV. For the same reasons discussed above, Individual Defendants are entitled to qualified immunity

Plaintiffs do not dispute that they must plead facts that plausibly show (1) the Individual Defendants' actions violated a constitutional or statutory right, and (2) that this right was clearly established at the time. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1284 (10th Cir. 2004). (Resp., p. 4.). There is also no dispute that "[f]or the law to be 'clearly established,' there ordinarily must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction." *Pompeo v. Bd. of Regents of the Univ. of New Mexico*, 852 F.3d 973, 981 (10th Cir. 2017).

And Plaintiffs admit that "[n]either the Supreme Court nor Tenth Circuit seems to have

---

[5] Plaintiffs also cite *Flores v. Victory Preparatory Acad.*, 411 F. Supp. 3d 1149, 1162 (D. Colo. 2019). *Flores* treated a procedural due process claim as a First Amendment retaliation claim and concluded that parents' complete exclusion, based on viewpoint differences, from campus events to which the public was invited stated such a claim.

addressed First Amendment retaliation arising from an indefinite interim campus ban exactly like the one here," but claim the law was clearly established as to less severe sanctions. (ECF #52, p. 6.) As discussed above, none of the cases support Plaintiffs' arguments because the exclusions in those cases were permanent or it was established that the sanction was due to the content of the speech at issue. Those facts are not present in this case, and Plaintiffs fail to allege otherwise. Defendants Nelson and Cramer are entitled to dismissal based on qualified immunity.

Defendant Cramer is also entitled to dismissal for the additional reason that the only allegation of "retaliation" against him is filing the police report. Defendant Cramer did not sign the limited exclusion notices, nor are there any factual allegations as to how he personally was involved in the decision to impose the limited exclusion. When alleging a Section 1983 action against a government employee in their individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). This is especially true where, as here, Plaintiffs have named "a number of government actors sued in their individual capacities." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008).

To state a claim under Section 1983, the complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Robbins*, 519 F.3d at 1250. In other words, when "imposing personal liability on government officials, [courts] have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013*). See also Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) ("The need for individualized allegations is

especially important where, as here, each of the defendants had different powers and duties, but the Complaint fails to identify specific actions taken by particular defendants that could form the basis of a constitutional violation.").

Here, Plaintiffs have lumped Defendants Cramer and Nelson together, claiming summarily that they both were involved in the limited exclusion. However, the notices, ECF ## 52-1, 52-2, show that Defendant Nelson issued them. The only allegation directly against Cramer is that he filed the police report. (ECF #22, ¶ 130.) Plaintiffs appear to concede that the filing of the police report, by itself, is insufficient to state a First Amendment retaliation claim. (ECF #52, p. 6, n. 4.) Absent those allegations, Defendant Cramer should be dismissed for lack of individualized plausible allegations against him.

### V.     The Court must dismiss Claim 4.

Plaintiffs allege that the University waived its immunity under C.R.S. § 23-5-144 because "[t]he statute . . . expressly incorporates federal law . . . [and] authorizes an aggrieved student to bring an action . . . in any 'court of competent jurisdiction.'" (ECF #52, p. 15.) To the contrary, the United States Supreme Court has held that "'a State does not consent to suit in federal court merely by . . . authorizing suits against it 'in any court of competent jurisdiction.'" *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 666-67 (1999). Thus, Plaintiffs' claim 4 must be dismissed per F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction.

DATED: June 24, 2025.                    Respectfully submitted:

                                         *s/ Megan Clark*
                                         Megan Clark
                                         1800 Grant Street, Suite 700
                                         Denver, CO 80203
                                         303-860-5691
                                         Megan.Clark@cu.edu
                                         *Attorney for Defendants*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2025, I electronically filed the foregoing with the Court's electronic filing system (CM/ECF) which will automatically cause notification to be sent to the following counsel of record:

Daniel D. Williams
Matthew Simonsen
Grata Law and Policy LLC
1919 14th Street, Suite 700
Boulder, CO 80302
(303) 535-3533
dan@gratalegal.com
Matt@gratalegal.com

*Attorneys for Plaintiffs*

*s/ Elisha Garza*
Elisha Garza, Litigation Paralegal
